UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NASEAN BONIE,

                      Plaintiff,

     v.

ANTHONY ANNUCCI, *et al.*

                     Defendants.

No. 20-CV-640 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

     Pro se Plaintiff Nasean Bonie ("Plaintiff") seeks judicial intervention and Temporary Restraining Orders ("TROs") in a series of five letters filed with the Court on May 1, 2020 and May 6, 2020 (the "TRO Applications" or "Applications"). (*See* Dkt. Nos. 35–38, 44.)[1] Plaintiff's requests for the Court's intervention appear to stem from the following allegations: (1) Defendants and other officers at Green Haven Correctional Facility ("Green Haven") are verbally harassing and retaliating against Plaintiff, at least in part due to lawsuits he has filed, including the instant Action, (Dkt. Nos. 35–38, 44); (2) Plaintiff has been barred from accessing the law library, which is having computer problems, (Dkt. Nos. 35, 44); and (3) a food package sent to Plaintiff by his family was intentionally withheld, (Dkt. No. 36).[2]

---

[1] Four additional letters from Plaintiff were filed on May 1, 2020. (*See* Dkt. Nos. 40–43.) However, these letters appear to be duplicates of other letters filed on May 1. (*See* Dkt. Nos. 35–38.) As such, the Court does not further address these four letters herein.

[2] Plaintiff does not individually name Defendants, besides Superintendent Royce ("Royce"), in his TRO Applications. Thus, the Court assumes that Plaintiff's references to "Defendants" refers to all Defendants named in Plaintiff's Amended Complaint: Anthony Annucci ("Annucci"), Royce, Correction Officer ("C.O.") Ileshema Thomas ("Thomas"), Sergeant ("Sgt.") Cobb ("Cobb"), Sgt. Mazzalla ("Mazzalla"), C.O. Brogan ("Brogan"), C.O. Ruiz ("Ruiz"), and C.O. Matthews ("Matthews"; collectively, "Defendants"). (*See* Am. Compl. (Dkt. No. 19).)

I.  Background

The Court briefly recounts some of Plaintiff's correspondence to this Court, which has been profuse since he filed his Complaint on January 22, 2020.  (*See* Compl. (Dkt. No. 2).)[3]

On March 4 and March 5, 2020, the Court received two letters from Plaintiff titled "Request [for] Judicial Intervention (Emergency Circumstances)" and "Seeking Immediate Assistance."  (Letter from Pl. to Court (Mar. 4, 2020) ("Mar. 4 Pl. Letter"); Letter from Pl. to Court (Mar. 5, 2020) ("Mar. 5 Pl. Letter") (Dkt. Nos. 11–12).)[4]  Plaintiff stated that he was housed in the "mental health unit" at Green Haven and was being retaliated against due to actions he has brought in federal and state court.  (Mar. 4, 2020 Pl. Letter 1.)  Plaintiff represented that he was being denied access to the law library, his legal mail, and certain mental health treatment; that his possessions had been stolen; that unnamed Defendants attempted to physically harm him; and that, once he was moved to the mental health unit, Defendants cut off his air supply and hot water.  (Mar. 4 Pl. Letter 7–11; Mar. 5 Pl. Letter 1–2.)[5]  Plaintiff also took issue with the fact that before he was moved to the mental health unit, Defendants "intentionally moved [him] to G-Block," where he had been previously raped by Thomas.  (Mar. 5 Pl. Letter 2; *see also* Mar. 4 Pl. Letter 8–9.)  This alleged rape is the main subject of Plaintiff's Complaint and Amended Complaint.  (*See generally* Compl.; Am. Compl.)  However, Plaintiff also wrote

---

[3] On February 13, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, in forma pauperis ("IFP").  (Dkt. No. 7.)

[4] The pages in all of Plaintiff's letters are not consistently numbered.  Thus, the Court refers to the ECF-stamped page numbers at the top of each page for ease of reference.

[5] In these initial letters, Plaintiff also reiterated a request for counsel that he filed on January 22, 2020, which the Court subsequently denied without prejudice, (Dkt. No. 21), and appeared to seek leave to file an Amended Complaint.  The Court informed Plaintiff that he may amend his Complaint as a matter of course because the Complaint had not yet been served.  (Dkt. No. 14.)  On March 30, 2020, Plaintiff filed a 121-page Amended Complaint.  (*See generally* Am. Compl. (Dkt. No. 19).)

2

that upon his release from the mental health unit, he was "placed . . . in 'E-Block' away from the []retaliation[] from staff . . . at Green Haven." (Mar. 5 Pl. Letter 2.)  Plaintiff appeared to request that the Court transfer him to another facility. (Mar. 4 Pl. Letter 5; Mar. 5 Pl. Letter 3.)  Given that Defendants in the Action had not yet been served, on March 6, 2020, the Court contacted the New York Attorney General's Office (the "Office") to direct it to respond to Plaintiff's allegations. (Dkt. No. 13.)

After receiving an extension from the Court, (Dkt. No. 17), the Office responded to Plaintiff's initial letters, representing that much of the alleged retaliation, including the withholding of Plaintiff's mail and lack of access to the law library, was due to the fact that Plaintiff had been in the custody of the Psychiatric Satellite Unit ("PSU") from February 4, 2020 through February 28, 2020. (Dkt. No. 18.)  After directing an additional response from the Office related to Plaintiff's transfer request, (Dkt. Nos. 20, 23), the Court issued a memo endorsement on April 9, 2020, explaining that administrative decisions regarding prison transfers are generally within the discretion of DOCCS, (Dkt. No. 24).  The Court also noted that Plaintiff's Complaint and Amended Complaint set forth his allegations of sexual harassment, and as such, the case would proceed on those claims. (*Id.*)[6]

On April 16, 2020, Plaintiff filed two more letters with the Court, alleging that he was being denied access to the law library, notary, commissary, shower, and phone; that "Defendants ha[d] still been maliciously doing things towards [him]," such as making verbal and non-verbal

---

[6] On April 8, 2020, the Office entered a Notice of Appearance on behalf of Annucci and Royce. (Dkt. No. 22.)  These Defendants, along with Thomas, have been served with Plaintiff's initial Complaint. (Dkt. Nos. 32–34.)  Plaintiff also named Cobb, Mazzalla, Brogan, Ruiz, and Matthews as Defendants in his Amended Complaint. (*See generally* Am. Compl.)  From the docket, it appears that these Defendants have not yet been served, and, along with Thomas, have not appeared in this Action. (*See generally* Dkt.)

3

threats; that there was a "beat up squad" at Green Haven involving Matthews and other non-Defendant C.O.s; and that he had been raped and sexually assaulted by Thomas, as detailed in his Complaint and Amended Complaint. (Letter from Pl. to Court (Apr. 16, 2020) ("Apr. 16 Pl. Letter A") 1; Letter from Pl. to Court (Apr. 16, 2020) ("Apr. 16 Pl. Letter B") 1 (Dkt. Nos. 26–27).) Plaintiff further alleged that Royce failed to correct any of these issues. (Apr. 16 Pl. Letter A 1.)[7] The Court directed Defendants to respond, (Dkt. No. 28), and counsel for Annucci and Royce did so on April 23, 2020, (Dkt. No. 29). On April 24, 2020, the Court issued another memo endorsement reiterating that, to the extent Plaintiff sought a transfer, any decisions were generally within the discretion of DOCCS, and noting that Plaintiff's recently-filed Amended Complaint appeared to include many of the allegations raised in his April 16, 2020 letters against Thomas, Matthews, and Royce. (Dkt. No. 30.) The Court further noted that counsel for Annucci and Royce represented that Plaintiff had had recent access to the law library, telephones, and commissary, and that Plaintiff had not filed any recent reports at Green Haven regarding use of force. (*Id.*)

On May 1, 2020, Plaintiff filed the four TRO Applications that are the subject of this Order, along with a subsequent Application on May 6, 2020. (Letter from Pl. to Court (May 1, 2020) ("May 1 Pl. Letter A"); Letter from Pl. to Court (May 1, 2020) ("May 1 Pl. Letter B"); Letter from Pl. to Court (May 1, 2020) ("May 1 Pl. Letter C"); Letter from Pl. to Court (May 1,

---

[7] Plaintiff attached a series of purported grievances to one of his letters, dated from May 3, 2019 to March 19, 2020. (*See* generally Apr. 16 Pl. Letter A.) These grievances, addressed to Green Haven, raised various allegations of harassment, retaliation, and denial of privileges against various C.O.s, including Matthews, C.O. Blot ("Blot"), C.O. Garcia ("Garcia"), C.O. Germano ("Germano"), C.O. Baez ("Baez"), C.O. Pardo ("Pardo"), C.O. Boone ("Boone"), C.O. Erena ("Erena"), C.O. Ramirez ("Ramirez"), and C.O. Fogg ("Fogg"). (Apr. 16 Pl. Letter A 2–6, 8–15.)

2020) ("May 1 Pl. Letter D"); Letter from Pl. to Court (May 6, 2020) ("May 6 Pl. Letter") (Dkt. Nos. 35–38, 44).) Defendants responded to Plaintiff's May 1 Applications on May 11, 2020, as directed by the Court. (Dkt. Nos. 39, 45.)

The Court briefly recounts the allegations in Plaintiff's TRO Applications. First, Plaintiff alleges that Sgt. Rosita Rossy ("Rossy") is the "head female in the notorious beat up squad led by . . . Blot," and has been "daily . . . threatening [Plaintiff]," by stating, for example, "If you don't drop your lawsuits on my officers, you won't make it out of here alive," and threatening and harassing another inmate. (May 1 Pl. Letter A 1–2.) Second, Plaintiff alleges that "Defendants" are "maliciously withholding" a food package sent to him by his family. (May 1 Pl. Letter B 1–2.) Third, Plaintiff alleges that Sgt. Zikia Jordan ("Jordan") and C.O. Colombos, other members of the "beat up squad," unnecessarily ordered Plaintiff to take off his clothes, which Plaintiff refused to do. (May 1 Pl. Letter C 1–2.) Fourth, Plaintiff alleges that C.O. Heinz ("Heinz") threatened Plaintiff, stating, "You won't be suing me dickhead, I'll kill you with this stick, stop writing me up bitch." (May 1 Pl. Letter D 2.) Fifth, Plaintiff alleges that he has been barred from the law library by Royce and Deputy Kopp ("Kopp"), and that the computers in the law library are not working. (May 1 Pl. Letter A 1; May 6 Pl. Letter 1.) Lastly, Plaintiff generally alleges that "Defendants" and "members of th[e] notorious beat up squad . . . have taken it upon themselves to threaten, harass, delay[,] [and] sabotage things for [Plaintiff] at [Green Haven]"; specifically, Rossy, who is not a Defendant in this Action, has stood behind Plaintiff, stared at him "dangerously", and pointed at him. (*Id.* at 1–2.) Plaintiff attached to each of these Applications grievances that he has purportedly filed at Green Haven.

II.  Discussion

Plaintiff's TRO Applications do not appear to include requests for specific relief from the Court.  However, the Court infers from the grievances attached to these Applications, and previous letters submitted by Plaintiff, that he is seeking a transfer from Green Haven.  (May 1 Pl. Letter B 1 ("I understand . . . Defendants do not want to transfer me[,] but [it is] to just further intentionally retaliate[.]"); May 1 Pl. Letter D 2 ("[T]his is why I should have been moved out of this facility[.]"); *see also* Mar. 4 Pl. Letter 10 ("I . . . need to be transferred to another facility . . . ."); Apr. 16 Pl. Letter B 1 ("I am asking for appointment of counsel [and] transfer to another facility . . . .").)  For the following reasons, Plaintiff's Applications are denied.

At the outset, inmates have no right to be housed in a particular correctional facility.  *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (holding that the Constitution does not guarantee convicted prisoners the right to be placed in any particular prison); *see also Montanye v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York State gives inmates no right to be housed in a particular correctional facility).  Further, as the Court has previously instructed, administrative decisions concerning prison transfers are generally within the discretion of DOCCS.  (*See* Dkt. Nos. 24, 30.)  *See Mitchell v. N.Y. State Dep't of Corr. Servs.*, No. 06-CV-6278, 2012 WL 5197676, at *2 (W.D.N.Y. Oct. 19, 2012) ("Plaintiff's request for an injunction requiring DOCCS to transfer him is denied.  Prison inmates have no right to choose where they are housed."); *Walker v. McGinnis*, No. 05-CV-418, 2007 WL 914028, at *2 (W.D.N.Y. Mar. 23, 2007) ("As for [the] [p]laintiff's TRO [m]otion seeking to be transferred to another facility, prison inmates do not have a right to be placed in a particular facility . . . .  In New York [S]tate, administrative decisions concerning prisoner transfers are within the discretion of [DOCCS]." (citations omitted)); *Tinsley v. Goord*, No. 05-CV-3921, 2006 WL 2707324, at *5 (S.D.N.Y.

6

Sept. 20, 2006) ("Decisions about prisoner transfers are placed entirely at the discretion of the DOC[C]S Commissioner." (footnote omitted) (citing N.Y. Correct. Law § 23)); *see also Belile v. Doe No. 1*, No. 10-CV-6501, 2012 WL 3562032, at *1–2 (W.D.N.Y. Aug. 16, 2012) (denying transfer out of facility staffed by defendant correction officers who the plaintiff claimed in his complaint used excessive force); *Smolen v. Dildine*, No. 11-CV-6434, 2011 WL 6030112, at *2 (W.D.N.Y. Dec. 5, 2011) (same). Thus, to the extent that Plaintiff seeks a transfer from this Court, he has shown no likelihood of success on the merits.

Second, nearly all of the individuals against whom Plaintiff makes specific allegations are not named as Defendants in Plaintiff's Amended Complaint, and the events detailed with respect to these individuals do not appear to be discussed in the Amended Complaint. A preliminary injunction or a TRO is not proper where the motion involves parties and presents issues that are different from those named and alleged in the complaint. *See Stewart v. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (holding that the district court had no jurisdictional basis upon which to issue a preliminary injunction where the plaintiff's motion for preliminary injunctive relief was based on issues not raised in the complaint); *Olsen v. Doldo*, No. 16-CV-5366, 2017 WL 1422431, at *3 (S.D.N.Y. Apr. 20, 2017) (finding that because the petitioner's motion for a preliminary injunction and TRO "present[ed] issues which [we]re entirely different from those which were raised in his original petition," the court lacked jurisdiction to issue the requested relief (citation, alteration, and quotation marks omitted)), *appeal dismissed*, No. 17-1526 (2d Cir. 2017). Thus, the Court lacks the authority to review and decide upon the majority of the allegations raised in Plaintiff's TRO Applications. *See Ford v. Deacon*, No. 16-CV-1001, 2018 WL 555512, at *2 (N.D.N.Y. Jan. 23, 2018) (denying a motion for a preliminary injunction to transfer an inmate who complained of retaliation, false misbehavior reports, and cell searches

because the officers were not parties to the action and the conduct was unrelated to the underlying claims in the suit). Moreover, the allegations that Plaintiff makes against "Defendants" as a whole in his Applications are non-specific and conclusory. (*See* May 1 Pl. Letter A 1 ("Defendants are still harassing and threatening me."); May 1 Pl. Letter B 1 ("Defendants are still using [their] campaign of harassment against me by intentionally retaliating against me[.]"); May 1 Pl. Letter C 3 ("Defendants['] conduct has just gotten completely out of control and sadistic[.]" (quotation marks omitted)); May 1 Pl. Letter D 1 ("Defendants continue to intentionally retaliate against me . . . ."); May 6 Pl. Letter 1 (same).) Thus, "Plaintiff has not alleged sufficient facts regarding the nature of *Defendants'* . . . retaliatory acts against him to show that he will be irreparably harmed if a [TRO] is not granted." *See Hartley v. Seely*, No. 15-CV-1345, 2016 WL 1558461, at *1 (N.D.N.Y. Apr. 18, 2016) (emphasis added).

The only specific allegation Plaintiff raises against a Defendant involved this Action is that Royce has denied him access to the law library. (May 1 Pl. Letter A 1.) However, a party seeking a TRO or preliminary injunction must show: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted); *see also Barbecho v. Decker*, No. 20-CV-2821, 2020 WL 2317876, at *3 (S.D.N.Y. May 11, 2020) (noting that "[t]he same standard that governs consideration of an application for a [TRO] also governs consideration of an application for a preliminary injunction" (citation omitted)). Plaintiff's allegations against Royce fail to meet this high bar, as his alleged lack of access to the law library does not show that he will suffer "actual and

imminent" irreparable harm. *Young-Flynn v. Wright*, No. 05-CV-1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (citation and quotation marks omitted). To date, Plaintiff has effectively litigated this Action by, inter alia, filing a Complaint, Amended Complaint, Motion for Appointment of Counsel, numerous requests for judicial intervention, and the instant Applications. (*See generally* Dkt.) Further, there are no pending motions in this Action, and no briefing schedule has been set. Thus, Plaintiff has failed to demonstrate any "actual and imminent" harm from the alleged denial of access to the law library. *See Houston v. Capra*, No. 20-CV-2135, 2020 WL 1659833, at *3 (S.D.N.Y. Apr. 3, 2020) (denying the plaintiff's application for a TRO and preliminary injunction alleging, inter alia, lack of access to the prison law library); *Young v. Kadien*, No. 09-CV-6639, 2010 WL 2680499, at *3 (W.D.N.Y. June 29, 2010) ("[The] [p]laintiff's allegations [regarding access to the law library, verbal harassment, and taking of his legal documents] do not show that immediate and irreparable injury, loss, or damage will result to [the] plaintiff before the adverse party can be heard in opposition." (citation omitted)); *Colon v. Goord*, No. 05-CV-129, 2007 WL 81922, at *2 (N.D.N.Y. Jan. 9, 2007) (determining that the plaintiff had not established "that he ha[d] been hindered in his pursuit of [his] claims" due to alleged limited access to the law library (citation omitted)).

Finally, Plaintiff must administratively exhaust new claims before he can litigate them in any federal district court. The fact that Plaintiff is litigating one Action before this Court involving certain events and Defendants at Green Haven does not mean that the Court has the authority or resources to monitor and rule on every new unrelated allegation against individuals who are not parties to this case. *Cf. In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) (holding that "[a] court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction" (citation omitted)); *Smith v.*

*Paladino*, No. 16-CV-543, 2016 WL 6916943, at *2 (N.D.N.Y. Nov. 21, 2016) (denying the plaintiff's letter motion for injunctive relief against individuals not named as defendants) (collecting cases); *McAllister v. Goord*, No. 06-CV-0442, 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009) (denying a request for injunctive relief that was unrelated to claims set forth in the underlying pleading). From Annucci and Royce's response to Plaintiff's Applications, it appears that in addition to the above, Plaintiff may not have exhausted many of the allegations he brings before the Court. (Letter from Daphna Frankel, Esq. to Court (May 11, 2020) ("May 11 Frankel Letter") 1 (noting that DOCCS officials have recorded no incidents of force or unusual incidents involving Plaintiff since 2015, and that Plaintiff has refused to cooperate or speak with DOCCS officials attempting to investigate his grievances) (Dkt. No. 45).)

This Order serves as notice to Plaintiff that the Court will not entertain any further requests that are not related to events and Parties in the instant case, or that Plaintiff has not properly exhausted (or for which exhaustion may be excused).

### III. Conclusion

Accordingly, for the reasons stated above, Plaintiff's TRO Applications are denied. Counsel for Defendants Annucci and Royce is respectfully directed to mail a copy of this Order to Plaintiff and to confirm on the docket that she did so by May 18, 2020.

SO ORDERED.

Dated:    May 14, 2020
           White Plains, New York

                                            KENNETH M. KARAS
                                            UNITED STATES DISTRICT JUDGE